## Case No. 1,504.

### BLAKE v. STAFFORD.

[6 Blatchf. 195; 3 Fish. Pat. Cas. 294.] [1]

Circuit Court, D. Connecticut. Oct. 8, 1868.

PATENTS—INFRINGEMENT—NOVELTY — SURRENDER AND REISSUE—VALIDITY OF CLAIMS—AMBIGUITY — CONSTRUCTION — DECISION OF COMMISSIONER OF PATENTS—FINALITY — NEW COMBINATION OF WELL-KNOWN PRINCIPLES — FRAUD—PLEADING.

1. The privilege of surrender and reissue is invaluable to inventors, for, without it, they would often lose that protection for the offspring of their skill and labor which it is the immediate object of all patents to afford. As the law now stands, the decision of the commissioner is final and conclusive, in cases of reissue, unless impeached for fraud in his or the patentee's acts, or for some irregularity arising on the face of the papers, or a clear repugnance between the original and reissued patents.
   [Cited in Chicago Fruit House Co. v. Busch, Case No. 2,609.]
   [See Hussey v. Bradley, Case No. 6,946; Middleton Tool Co. v. Judd, Id. 9,536; Swift v. Whisen, Id. 13,700; House v. Young. Id. 6,738; Crompton v. Belknap Mills, Id. 3,406; Jordan v. Dobson, Id. 7,519; French v. Rogers, Id. 5,103.]

2. Under the act, the commissioner has the power to decide, and in every acceptance of surrender and reissue does decide, that the origi-

nal patent was inoperative and invalid by reason of a defective specification, or by claiming too much, and that the error arose by inadvertency, accident or mistake, and without any fraud or deceptive intention. He is authorized to grant a new patent for the same invention, and for no other; and, when he grants the new one, the presumption is that it embraces the same invention as the original.

3. The issue of fraud can only be raised by distinct and special allegations in the plea or answer. The allegation that the "claim is fraudulently and falsely made broader and more general and comprehensive than his invention" does not properly present any material question of fact, or raise any question of fraud.

4. The averments that the specification of the reissue "is vague, ambiguous, and uncertain, and does not in a full, clear, and exact manner, or with sufficient certainty describe the invention of the said Blake, or the manner of making the machine mentioned in his declaration, * * * that it contains more than is necessary to produce the desired result, * * * that the claim for a mode of breaking stone is frivolous, * * * and that for divers other reasons the patent is void," do not raise any question of fact, except the one whether the construction of the machine is sufficiently described to enable one skilled in the art to make it.

5. The office of the claim is to define the limits of the patented discovery claimed by the inventor as his exclusive property. The language of the claim need not, unless the peculiar nature of the subject matter require it, be expressed with technical exactness. If by the use of good sense and the ordinary rules of interpretation the court can clearly see the nature and limits of the invention, the claim will be upheld.

6. If the claim is so ambiguous and uncertain that its true meaning cannot be made out without resorting to conjecture, or if it includes that which is old, and therefore not within the power of the patentee rightfully to claim, then the patent is void.
   [See Western Electric Manuf'g Co. v. Ansonia Brass & Copper Co., 114 U. S. 447, 5 Sup. Ct. 941.]

7. Whether the claim is vague and uncertain is a question of law to be determined by the rules of construction applied in the light of the state of the art. Whether it claims too much is a question of law to be determined in the same way. The element of fraud is not essential to the determination of either of these questions by the courts.

8. The good faith of the patentee is a material question for the commissioner, when deciding on the surrender and the reissue. But when the patent is brought to the test of a litigation, ambiguity or excess in the specification and claim is to be determined by construction.

9. Ambiguity, which defies construction to elucidate, is fatal, and it is unimportant whether it had its origin in the mala fides of the patentee, or in haste or incompetency of the draftsman.

10. A claim which clearly embraces what is old is void, whether introduced purposely or by mistake.

11. The fact that the patent is ambiguous, or claims too much, is the vital test of its validity, and not the motive or circumstance in which such ambiguity or excessive claim originated.

12. The rule of liberal construction rests upon public policy, and not upon cases of individual merit.

13. It may be that the ground covered by the reissue is enlarged beyond that embraced in

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq.; and here compiled and reprinted by permission. Statement and opinion from 6 Blatchf. 195, and syllabus from 3 Fish. Pat. Cas. 294.]

the original. But the true question is, whether it is broader than the original invention.

14. The question is not whether the elements of the patented combination are new, but whether the combination is new.

15. Though the separate parts are all as old as the mechanic arts, if they are organized into a new machine having a new mechanical operation, and the organization of this new machine involved the exercise of original thought and is productive of useful results, then it is patentable. If no inventive skill, but only mechanical dexterity, was necessary to produce the machine, then it is not patentable.

[See Crosby v. Lapouraille, Case No. 3,424; Latta v. Shawk, Id. 8,116; Lee v. Blandy, Id. 8,182; Emigh v. Chicago, B. & Q. R. Co., Id. 4,448; Woodman v. Stimpson, Id. 17,979; Rees v. Gould, 15 Wall. (82 U. S.) 187.]

16. Blake's patent for machinery for breaking stones, granted June 15, 1858, and reissued January 9, 1866, is valid.

[Cited in Blake v. Eagle Works Manuf'g Co., Case No. 1,494; Blake v. Rawson, Id. 1,499; Blake v. Robertson, Id. 1,500.]

This was an action at law [by Eli W. Blake against Charles W. Stafford], for the infringement of reissued letters patent granted to the plaintiff, January 9th, 1866, for an "improvement in machinery for breaking stones," on the surrender of original letters patent, granted to him as inventor, June 15th, 1858.

The action was tried before SHIPMAN, District Judge, without a jury.

SHIPMAN, District Judge. The specification of the original patent granted to the plaintiff, gave the following general description of the mechanism of his machine: "My stone-breaker, so far as respects its principle, or its essential characteristics, consists of a pair of jaws, one fixed and the other movable, between which the stones are to be broken, having their acting faces nearly in an upright position, and converging downward, one toward the other, in such manner that, while the space at the top is such as to receive the stones that are to be broken, that at the bottom is only sufficient to allow the fragments to pass when broken to the required size, and giving to the movable jaw a short and powerful vibration through a small space, say one-fourth of an inch, more or less. By means of this form and arrangement of the jaws, and this motion of the movable jaw, when a stone is dropped into the space between them, it falls down until its farther descent is arrested between their convergent faces, the movable jaw, advancing, crushes it, then, receding, liberates the fragments, and they again descend, and, if too large, are again crushed, and so on until all the fragments, having been sufficiently reduced, have passed out through the narrow space at the bottom. The details of the structure of the machine, other than those already specified, relating to the manner of supporting the jaws in their proper relative position, and giving motion with the re-

quired power to the movable jaw, may be varied indefinitely, without affecting its principle of operation." The inventor then proceeded to give a detailed description of all the parts of the machine, and concluded with the following claim: "What I claim as my invention in the herein described machine, and desire to secure by letters patent, is the combination of the following features in the construction, arrangement, and movement of the jaws, to wit: 1. Making the acting faces of the jaws upright, or so nearly so that stones will descend by their own gravity between them; 2. Making the acting faces of the jaws convergent, in such manner that, while the space between them at the top is sufficient to receive the stones that are to be broken, that at the bottom shall be only sufficient to allow the fragments to pass when broken to the required size; 3. Giving a short, vibratory movement to the movable jaw. I disclaim the above three features severally, and limit my claim to their joint co-operation, as herein described, in a machine for breaking stones or other hard substances."

In the specification of the reissued patent, the general description above cited from the original, is enlarged, by introducing the words, "and of a revolving shaft driven by steam or other power, which is made to impart to one of these jaws a continual vibratory movement," &c. There are some other unimportant verbal changes in this part of the description. The claim of the reissue is as follows: "1. The combination, in a stone-breaking machine, of the upright convergent jaws, with a revolving shaft and mechanism, for imparting a definite reciprocating movement to one of the jaws from the revolving shaft, the whole being and operating substantially as set forth; 2. The combination, in a stone-breaking machine, of the upright movable jaw with the revolving shaft and fly-wheel, the whole being and operating substantially as set forth; 3. In combination with the upright converging jaws and revolving shaft, imparting a definitely limited vibration to the movable jaw, so arranging the jaws that they can be set at different distances from each other at the bottom, so as to produce fragments of any desired size."

The material difference between the specification of the original and that of the reissue consists in introducing into the general description in the latter the revolving shaft; and in an entire reconstruction of the claim. The specification and claim of the reissue are referred to in the notice filed under the general issue, in two places, and in different forms of allegation. The good faith of the plaintiff in surrendering the original and obtaining the reissue, and the identity of the two, were questioned on the argument. As the questions attempted to be raised in this part of the case are so often mooted in suits of this character, I deem it proper to recall

attention to the legal status of reissued patents in their relation to the originals, and of questions of fraud growing out of imputed motives for obtaining reissues, as well as out of alleged corrupt or deceitful practices by inventors or owners of patents, in availing themselves of the privilege conferred by the surrender and reissue clause of the act of congress.

The 13th section of the act of July 4th, 1836 (5 Stat. 122), provides, that when a patent "shall be inoperative or invalid by reason of a defective or insufficient description or specification, or by reason of the patentee claiming, in his specification, as his own invention, more than he had or shall have a right to claim as new, if the error has or shall have arisen by inadvertency, accident, or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the commissioner, upon the surrender to him of such patent, and the payment of the further duty of fifteen dollars, to cause a new patent to be issued to the said inventor for the same invention, * * * in accordance with the patentee's corrected description and specification." Under this section, patents are constantly being surrendered and reissued; and it is not to be denied that the practice is frequently attended with embarrassment to the courts and the public. Inventors are not usually sufficiently skilled in the art of nice composition, to enable them to accurately draft their own specifications. They must, therefore, resort to others; and it not unfrequently happens that the draftsman employed to describe a particular invention, either through want of skill, or from haste or ignorance of the state of the art, gives, in the specification, a very imperfect description of the thing invented. He sometimes narrows the scope of the inventor's ideas and combinations, and at other times expands them over instruments and devices which are not the product of his original thoughts. He may fail to set forth some feature of the invention which at the time is deemed unimportant, and which subsequently may be proved to be vital, or at least of great value. If the invention is of considerable pecuniary consideration, the public examine it with scrutinizing eyes, and, if an inch of ground within the true scope of the discovery is unoccupied by the specification, it is at once seized upon by parties to whose business the new improvement has a near relation. If a fatal or damaging error has crept into the description, that fact is soon ascertained by those who desire to avail themselves of whatever improvement has been discovered. The privilege of surrender and reissue is, therefore, invaluable to inventors, for without it they would often lose that protection for the offspring of their skill and labor which it is the immediate object of all patent laws to afford. It is, indeed, to be regretted that so great a proportion of the industry and intellectual acumen expended upon patents should be devoted to assailing, circumventing or defeating them, rather than to their original construction. But the greatest skill and most untiring patience would not always be able to guard against all error. The privilege of surrender and reissue is, therefore, necessary for the protection of inventors, and the act of congress has explicitly stated the cases to which it shall extend, and conferred upon the commissioner the power of determining when a patentee has brought himself within its provisions. As the law now stands, I regard the decision of the commissioner as final and conclusive, unless impeached for fraud in his or the patentee's acts, or for some irregularity arising on the face of the papers, or for a clear repugnance between the original and reissued patents. Under the act, the commissioner has the power to decide, and, in every acceptance of a surrender and every reissue, does decide, that the original patent was inoperative and invalid by reason of a defective specification or by claiming too much, and that the error arose by inadvertency, accident, or mistake, and without any fraudulent or deceptive intention. He is authorized to grant a new patent for the same invention and for no other, and, when he grants the new one, the presumption is that it embraces the same invention as the original. The jurisdiction of the commissioner is final and conclusive, unless, as already stated, fraud or collusion somewhere is proved, or some irregularity is apparent on the face of the papers, or there is a plain repugnance between the old and new specifications.

The issue of fraud can be raised only by distinct and special allegations in the plea or answer. Woodworth v. Stone [Case No. 18,021]; Allen v. Blunt [Id. 216]; Potter v. Holland [Id. 11,330]; Philadelphia & T. R. Co. v. Stimpson, 14 Pet. [39 U. S.] 448; Stimpson v. West Chester R. Co., 4 How. [45 U. S.] 380. Now, the allegations in the notice under the general issue in this case, raise no question of fraud. The averments, that the specification of the reissue "is vague, ambiguous, and uncertain, does not, in a full, clear, and exact manner or with sufficient certainty, describe the invention of the said Blake, or the manner of making the machine mentioned in his declaration, * * * that it contains more than is necessary to produce the desired result, * * * that the claim for a mode of breaking stone is frivolous, * * * and that, for divers other reasons, the patent is void," do not raise any question of fact, except the one whether the construction of the machine is sufficiently described to enable one skilled in the art to make it. Nor does the allegation that the "claim is fraudulently and falsely made broader and more general and comprehensive than his invention," properly present any material question of fact. The office of the claim is to define the limits of the patented discovery claimed

by the patentee as his exclusive property. The language of this part of the instrument need not, unless the peculiar nature of the subject-matter requires it, be expressed with technical exactness. If, by the use of good sense, and the ordinary rules of interpretation, the court can clearly see the nature and limits of the invention, the claim will be upheld. If it is so ambiguous and uncertain that its true meaning cannot be made out without resorting to conjecture, or if it includes that which is old, and, therefore, not within the power of the patentee rightfully to claim, then the patent is void. Lowell v. Lewis [Case No. 8.568]; Barrett v. Hall [Id. 1,047]; Moody v. Fiske [Id. 9,745]. Whether it is vague and uncertain is a question of law, to be determined by the rules of construction, applied in the light of the state of the art. Whether it claims too much is a question of law, to be determined in the same way. The element of fraud is not essential to the determination of either of these questions by the courts. The good faith of the patentee is a material question for the commissioner, when deciding on the surrender and the reissue. But, where the patent is brought to the test of a litigation, ambiguity or excess in the specification and claim is to be determined by construction, and the instrument must stand or fall under this test. Ambiguity which defies construction to elucidate, is fatal; and it is unimportant whether it had its origin in the mala fides of the patentee, or in the haste or incompetency of the draftsman. A claim which clearly embraces what is old is void, whether introduced purposely or by mistake. The fact that the patent is ambiguous, or claims too much, is the vital test of its validity, and not the motive or circumstance in which such ambiguity or excessive claim originated. It might be said that, if a fraudulent intent to make the specification or claim obscure, were proved by extrinsic evidence, the court ought not to give the patentee the benefit of the liberal rule of construction which prevails in favor of inventors. But this rule of construction rests upon public policy, and not upon cases of individual merit. Its application to the instrument is necessary before it can be determined whether or not the alleged defect exists. To withhold its application would be to punish before the corpus delicti is proved.

It follows, from these views, that there is no question of fraud in fact presented in this case, which is cognizable by the court. The propriety and validity of the reissue are not open questions, in the present state of the pleadings, unless presented on the face of the papers. No irregularity is discovered in the written proceedings connected with the surrender and reissue; and, after a close and careful comparison of the original and new specifications, I find no such repugnance between them as would warrant me in saying that the commissioner has exceeded his jurisdiction by reissuing the patent for a different invention from that embraced in the original. The specification of the reissue differs, of course, from that of the original. The object of the surrender was to modify the description, or claim, or both. It may be, as the defendant insists, that the ground covered by the reissue is enlarged beyond that embraced in the original. But the true question is, whether it is broader than the original invention. The first branch of the claim is, for "the combination, in a stone-breaking machine, of the upright convergent jaws, with a revolving shaft and mechanism, for imparting a definite reciprocating movement to one of the jaws from the revolving shaft, the whole being and operating substantially as set forth." The second branch claims a subordinate combination of the movable jaw with the revolving shaft and fly-wheel. The first part of the third branch of the claim purports to be for a combination, but the whole sentence shows nothing more than the arrangement of the jaws and their adjustability, so that they can be set at different distances from each other at the bottom, in order to fix the size of the fragments to which the stones are to be reduced. The whole claim, when read in the light of the specification and drawings, discloses plainly the organized mechanism which the inventor has patented. It consists of two strong upright, or nearly upright, convergent jaws, fixed in a suitable frame, one of the jaws being stationary and the other movable, the movable jaw being connected with a revolving shaft and mechanism, whereby, when the motive power is applied, a definite reciprocating and vibratory movement is imparted to the movable jaw, by which it alternately advances and recedes from the fixed jaw, crushing the stones as it advances and liberating them as it recedes, so that they drop out from between the bottom of the jaws, of a size substantially determined by the distance by which they are separated when the movable jaw is drawn back. This distance, and consequently the size of the fragments, may be varied, by adjusting the machine as described in the specification.

The only difference that I can discover between the mechanical construction of the vital part of this machine and of that of the defendant is, that every part of the movable jaw of the latter advances and recedes through an equal range of motion, while, in the plaintiff's, the movable jaw is so hung and operated that the range through which it moves is greater at some points than at others. In both, the whole body of the movable jaw advances towards and recedes from the fixed jaw at every throw of the machine. By this advancing and receding motion, the stones are alternately crushed and liberated. The intervening mechanisms, by or through which the motive power is imparted, are well-known mechanical equivalents, and the common property of the mechanical world.

But the combination of these upright convergent jaws, so constructed and adjusted, with a revolving shaft, by which this action of the movable jaw is produced, appears, upon the proofs before me, to have originated with this plaintiff; and, as already stated, the only difference, in this part of the mechanism, between his machine and that of the defendant is, that the movable jaw of the former is both vibratory and reciprocating, and that of the latter reciprocating only, giving an equal range of motion to every part. It may be, that the simple motion of the defendant's jaw is preferable to the combined motion of the plaintiff's. But, assuming that to be the case, it is only an improvement on the latter. This improvement can give the defendant no right to use what the plaintiff first discovered. In my judgment, therefore, the machine of the defendant infringes on the grant secured to the plaintiff by his patent.

I have carefully examined the various patents, drawings, and models of other machines offered in evidence, to antedate the plaintiff's invention, but I do not find the same combination and arrangement of parts, nor the same mode of operation. I will here notice some of them.

The ice-breaker exhibited on the trial has a stationary and a movable jaw, but the latter is not hung, nor does it operate, in the way that the plaintiff's does. It is pivoted at a different point, and, as it moves forward, has, also, a downward motion. It is provided with sharp teeth, for penetrating and splitting the ice. Neither the whole machine, nor the movable jaw, is combined with a revolving shaft. Its arrangement and organization differ widely from the plaintiff's, and could not perform the work of breaking stone, as does the latter.

The iron squeezer, or alligator jaws, for compressing puddle balls and expelling their impurities, is still more unlike the plaintiff's machine. It operates like a lemon squeezer reversed, and gradually compresses the material partially softened by heat. It has none of that sudden, definite movement found in the plaintiff's machine, which may be termed a compound of pressure and blow, by which hard, brittle stones may be nipped and crushed to a particular size, [as found in Blake's machine.] [2]          •

In Ohnmacht's coal breaker, the two portions which are said to resemble the jaws in plaintiff's stone breaker are clearly different, and perform their work in a different way. One is perforated with holes, and, on the other, opposite the holes, are sharp teeth, which split the coal and force it through the opposite apertures. The coal is not reduced to fragments by compression between two solid surfaces, as in the stone breaker, but by teeth projecting from one surface driven against the pieces as they pass over the open

[2] [From 3 Fish. Pat. Cas. 294.]

spaces of the opposite surface. It certainly has not been proved, and it may well be doubted whether it could be proved, that this coal breaker, however massive and strong its organization, can perform successfully the work which the plaintiff's stone breaker performs, and performs well.

Poor's coal breaker has still less resemblance to the plaintiff's machine.

Hamilton's quartz crusher operates upon a different principle from the machine of the plaintiff. The work is done by a cylinder rotating on a central axis, within an eccentric stationary concave. As the cylinder oscillates, the stones in its grooves are carried around and pressed in between the cylinder and the internal surface of the approaching concave, and ground or crushed. The oscillating cylinder, which alone can perform any function similar to the plaintiff's movable jaw, has no vibratory or reciprocating motion carrying it towards a fixed object. Its oscillations describe the segment of a perfect circle. Its surface comes near, or recedes from, that of the concave, solely by reason of the eccentric sweep of the latter. It is hardly necessary for me to say that I do not find the organized mechanism described in the plaintiff's patent, in this machine of Hamilton's.

Considerable was said on the argument touching the fact that some or all of the elements included in the plaintiff's combination are old. But this is not material. The question is not whether the elements are new, but whether the combination is new. Though the separate parts are all as old as the art of the mechanic, if they are organized into a new machine, having a new mechanical operation, and the organization of this new machine involved the exercise of original thought and is productive of useful results, then it is patentable. If no inventive skill, but only mechanical dexterity, was necessary to produce it, then it is not patentable. Originality is the test of invention. If that is successfully exercised, its product is protected; and it is immaterial whether it is displayed in greater or less degree, or whether the new idea revealed itself to the inventor by a sudden flash of thought, or slowly dawned on his mind after groping his way through many and dubious experiments. It it needless to remark, that originality may be found as well in new combinations of old elements as in the production of new ones. I think the plaintiff's machine embodies a new combination. The utility of the invention is clearly proved.

No specific damages are proved, and they are, therefore, assessed at the nominal sum of one dollar. Let a judgment for the plaintiff for that sum be entered, with costs.

Subsequently, a motion for a new trial was made by the defendant, before the court when held by NELSON, Circuit Justice, and SHIPMAN, District Judge.

NELSON, Circuit Justice.[3] The amendment made on the surrender of the patent consisted in remodelling the claim. The descriptions and drawings are not only substantially but almost literally the same. The first amended claim embraces the first two original claims, and corrects the third original claim, which was imperfectly set forth in the first patent. The third original claim was a claim for giving a short vibratory movement, in the abstract. The second and third amended claims are well warranted from the description in the patent.

The only real question in the case arises out of the defence of want of novelty in the improvement. It has been strongly argued, that it is found substantially in one or more machines already in use—the ice breaker, or the coal breaker, or Hamilton's quartz crusher. Judge Shipman, before whom the case was tried without a jury, and who had an opportunity to examine the experts, and, also, these several machines, in connection with the testimony of the experts, came to the conclusion that the machine of the plaintiff was substantially different in combination and arrangement, and also in its mode of operation. My examination of these machines has led me to the same conclusion. Hamilton's quartz crusher embodies neither the arrangement nor the mode of operation of the plaintiff's machine, but operates on a different principle, embodying a different set of ideas; and that, I believe, is the only one produced which was intended to crush stone. The patent of the plaintiff has been before Vice Chancellor Wood, in England, on a petition for an injunction to protect it from infringement. The novelty of the machine was disputed, but the patent was sustained, and an injunction was granted.

On the whole, we are satisfied with the finding of the court, and must deny the motion for a new trial.

[NOTE. For other cases involving this patent, see note to Blake v. Robertson, Case No. 1,500.]

──────

[3] [Opinion of Mr. Justice Nelson, on motion for a new trial, reported in 6 Blatchf. 206.]